and Rodgers, for the appellant we have Charlie Voighta, and for the athlete we have Thomas Grisdale. Mr. Voighta, you may proceed. Thank you. If it please the court, your honors, counsel, Ms. Beaudette, your honors, this case before the court presents an opportunity to clarify the two legal standards in Illinois law involving custody cases. What I'll refer to as the first standard, of course as your honors know very well, is the best interest of the child standard, which none of us dispute, applies to initial custody determinations where there really isn't any prerequisites or preconditions to bringing that argument. The court weighs the evidence and determines what's in the best interest of the child, and perhaps may look at the circumstances of the parents and try to anticipate where the child would be safer, more secure, and where the child's home would be best served. A very different standard, I respectfully submit, is the standard involving the case before the court involving a petition to change custody. And it seems that this case presents an opportunity for this court to clarify the record, which may be muddied by much of what has been stated, about what the standard is. I respectfully submit that what I'll refer to as standard number two, or the change of custody standard, that that change is very different from the one which I refer to as the first standard. And that is because, as the cases that have been cited in the briefs, original custody determinations are strongly favored by Illinois law to promote stability for children. Thus, changes alone are not sufficient, but those changes must be shown by clear and convincing evidence that they adversely affect the child. The statute itself, section 610 of course I'm referring to, states that it's not by preponderance, but rather by clear and convincing evidence there must be proof that there's changed circumstances involving a custodian or the child, and, and it's very important to note the and in the statute, that modification is necessary to serve the best interest. It's my respectful position that my opponent has blurred that distinction into thinking that this language means that upon any evidence of change of circumstances, the court can then move on to a best interest of the child balancing act under the evidence, and perhaps change custody even without evidence that these changes have affected the child at all. The cases decided, and many of which have been cited by both sides, consistently hold that there's a two-part test, that there must be changes, but the proponent of the change of custody must be prepared to show that those changes have adversely affected the child before the court can then look at the best interest of the child's standard from section 602 and determine whether a change is necessary for the best interest of the child. In this case, the court heard much evidence, and the court in its original opinion did state that there was much concern under the evidence about the circumstances of the mother and certain incidences which were testified to at the trial. And yet, the trial court stated in its original opinion that everybody that I've heard, you have a great little guy. The court then denied the petition to change custody because in the court's words, all of the evidence, not some of the evidence, but all of the evidence, is that the child is a happy-go-lucky child and is well cared for. And at this point, the court noted that the mother, my client, Ms. Beaudet, had been the primary caregiver for several years since she moved to the Naperville area. The court noted that there was no evidence that the child was having any difficulty in school, at that time in kindergarten. The court further noted that everything in Terry Rogers' petitions for change of custody, and there were several in the record, as I'm sure the courts noted, all of those issues he had failed in his burden of proof under the second standard, such as, despite Terry Rogers' contention in the pleadings and at the trial, there was no evidence that anyone was trying to change the child's name to Beaudet. Despite Terry Rogers' contentions in his petitions, as well as at trial, there was no evidence, the court found, that the child was being coached to say that Terry was the bad daddy. Let me ask you a question. I want to make sure I understand you. Yes, Your Honor. If the trial court finds that there's been a change in circumstance, in the circumstances of the custodial parent, is it your position that that is not a sufficient basis upon which the court can then seek a re-assessment of whether or not a modification of custody is necessary in serving the child's best interest? It's not my position, it's the position of so many appellate courts that have heard this matter. The Nolte decision which was cited... That's the argument you're bringing to this court? Yes, Justice. How does that make any sense? What's that? That argument. Is that... Since the overarching concern for the court must be what's in the best interest of the child, if there's been a change in circumstances in the nature of the custodial parent's situation, why isn't that sufficient if the trial court now believes that it's in the best interest of the child to change custody for the court's use? Well, because as I stated before, the overwhelming thrust in Illinois law is continuity, and so this is not just an opportunity for us to file. I'm talking about not continuity, I'm talking about the trial judges making a determination. And as I gave occasion to mention this morning, this appellate court panel has about 45 years cumulative experience as trial judges. We've been there, we understand that. I'm the trial judge, and I hear about a change in circumstance in custodial parents, and I'm now on the opinion base of the evidence presented that a change in the custodial relationship, the custodial is in the best interest of the child, how can that be wrong? I guess what it boils down to is that an initial custody determination, the court is permitted, because of the way the statutes are constructed, to try to look into the future and say, what might happen? In this case, the court is to look at, in other change of custody cases, what has happened? Who has raised this child? And if there's a problem that's so affecting the child, we would expect to see some evidence from the child that he, in this case, has been adversely affected. Some emotional problems. So as the trial judge, I have to wait until the child's been harmed? I can't just change it on the basis that I think it's no longer the child's best interest to continue to be a custodial parent? Is that your position? No. My esteemed counsel, opponent, has said that there not need be actual harm. That's not what the cases say. The cases say the burden of proof is on the person seeking a change of custody to show that there's been changed circumstances, and those changed circumstances have adversely affected the child. What case holds that? Multifuse stain case. Any of those cases by the Illinois Supreme Court? Cotton. The Cotton case is a case where there was an adverse effect. Has the Illinois Supreme Court ever told what you are now arguing with us? I think the Cotton case stands for that. The Cotton case cited by Mr. Holmes in his briefs, he says, unequivocally, this case stands for the proposition that actual harm is not required to be present. That's not what the case says. What the case says is there need not be a finding that the custodial parent is unfit to change custody, but it doesn't say that the rule that an adverse effect on the child must be first present before the court can change custody. How can the argument you're making to us be consistent with our overarching concern that the best interest of the child is always a predominant factor? The best way for me to answer that, Justice, is that the statute does not permit an automatic best interest of the child in a change of custody. The language that I cited from Section 610 says there must be proof of a change of circumstances and that modification is necessary to serve the best interest of the child. The cases... What part of the statute then says, plus you have to show harm to the child already? It's not in the body of the statute, but the cases overwhelmingly have... That comes back to the question of the issue. I think the trial court is concerned to see to it that the best interest of the child may not be a predominant factor. I have now decided as a trial judge, a change of circumstance, is in the best interest of the child based upon the evidence presented. How can that be wrong? Because the statute says otherwise. The statute doesn't say otherwise. We just talked about that, Counselor. Excuse me? We just talked about that. The statute doesn't say harm has to be shown to the child. But it does say, and it doesn't read, I don't believe, respectfully, that you just go to a best interest of the child standard. Why not? Because you must look at the circumstances to determine whether a change is necessary because, as cited in the Pease case, Illinois law favors original custody judgments and that's why you've got this high standard which includes clear and convincing evidence. The argument you're making as a trial judge is, judge, even if you find, one, that there's been a change of circumstance, consider it, and two, it's in the best interest of the child to change custody, then, three, you can't do it. Well, I'm not so sure that the trial court determined in its original ruling that it was in the best interest of the child. It has to have the trial court determine in its original ruling. I'm asking you, is that the argument you're making to this court? One, I'm the trial judge. I filed the change of circumstance. Two, I find it's in the best interest of the child to change custody, but, three, you can't do a change. Absent a finding that those changed circumstances have adversely affected the child, which, rightfully, I don't believe the trial court was permitted under Illinois law to do so. Okay, I just want to make sure I understand what you're saying. And that's the argument because I read counsel's brief coming down here on my lengthy journey from Chicago, and I saw that he seems to be saying that once there's a change, the court can jump to the best interest of the child standard, and that's not what that language says. What language? The language from 610, which says, and modification is necessary to serve the best interest of the child. That doesn't say you can just go and use the first standard and balance the best interest of the child. You must look at those changed circumstances and determine whether or not those changes are necessary to serve the best interest of the child. And the common sense of that is, if the child's doing well in school, if the child's doing well at home, if the child's doing well with his friends and his family, as this trial court found, and found that this child, by all the evidence, is a great little guy, and that he's doing so superbly in his home environment, and that there's not a shred of evidence that a doctor has said that there's a problem with this kid, there's no reason to change his custody then, and the respondent has failed in his burden of proof, which is what the trial court found initially. And then the trial court, upon reconsideration, in my respectful position, Your Honor, reconsidered this without a basis under Illinois law, because there was no changes in the law, and there was no new evidence. The only arguable way would be for the court to say that it had misapplied the law, but the trial court didn't say that. You're telling me that the trial judge can't say, I've changed my mind, he's been 30 days? I don't think that's what the law allows. How can that possibly be correct? We had 45 years of trial judge experience here. It didn't happen often, but in my case, and I suspect in my colleague's case, I was presented with post-trial motions, and after the heat of the battle was over, it was called to my attention that God, you made a mistake in X, Y, and Z. I can't reconsider? I can't say, you know, I think Mr. Mota's got a good point here, and I'm going to change my mind. That's impermissible? The cases and the statutes suggest that there must be newly discovered evidence, there must be a change in the law, or there must be pointed out to the trial court that there was a misapplication of the facts or of the rule of law. In this case, the trial court didn't say, as Mr. Holmes said in his brief that it applied the wrong legal standard. The court simply said, I applied it too strongly. I've changed my mind, is what he said. Well, trial judges can't change their minds on discretionary rulings after the fact. It's my respectful position that the trial court applied the wrong legal standard in its second ruling by not insisting upon the requisite elements of changing the court's mind. So I can't just say, you know, I think it was wrong the first time? That's not a submission? No. Does that make any sense, counsel? Do you want trial judges to say, I've decided with that because I can't cite anything other than I think it was wrong as a basis to change my ruling? There has to be a legally permissible reason to change the court's decision and ruling. Do you think that's good policy? Well, I think that the court must look at its initial findings that this child was unaffected by those things, that the child was doing well, that his circumstances were, and one thing that I haven't pointed out that the judge noted in the trial court's first ruling, and that is despite the father's contention that changing homes would not be a problem, the court found that it would be a big problem and that changing this child's environment was disfavored in the law unless the father proved by clear and convincing evidence the legal requirements of the second standard. I respectfully submit, and the point of this appeal is that the court applied the wrong standard. Does that mean that the court can't look at things differently provided that there's an appropriate legal hook to reconsider? Of course not, but the court still must apply the law correctly, and in this case the court didn't apply the second standard and simply said that I can go to the best interests of the child standard because I placed too heavy a burden on the respondent. So the court was seemingly saying that this requirement that there be an adverse effect on the child as determined by the cases interpreting section 610 that the court didn't have to follow it. Going back to the court's original ruling, the first thing that Mr. Rogers felt was significant in filing his petitions to deal with the custody change was the gun incident. In its original ruling, the court said, in the words of my client's mother, Sally Ogle, everybody has moved on. The court further noted that the father had never visited the child's home, never seen his room, and never had any evidence that he was invited. It's important for the court to clarify what we've been talking about today, and that is, what does this second standard require? Is it simply that the court can take any evidence? How do we square that with nolte fusting peace? And I submit Cotton and the other cases that say change circumstances when they're not sufficient. I think they represent the rule of law. See, that's not the question I asked, though, is it? I think we are. Are we required to follow nolte or any other decisions of the adult? Well, I know nolte's a third district, so I don't recall if it's a fourth district. Correct? I guess the answer is no. Yes. But the rule of law, nonetheless, applies here in the fourth district as well. Mr. White, did the third district or the other side think that the third district criticized the decision of nolte in the later case of Brunt v. Brunt? I didn't read it that way, Your Honor. It seemed to me that it was simply a different set of circumstances. Clearly there was evidence of an effect on the child, but the court simply applied a best interest standard saying that the home environment seemed to be better, so we're going to switch custody. I think it was to the father, and that's what I'm submitting that Judge Garst did in the case below. The court simply said, look, I've made findings in both of my opinions that this kid's doing fine, but yet, based upon the evidence, it seems that he would be better off with dad, so why doesn't the statute mean, first of all, you have to show a change in circumstances by clear and convincing evidence, and that modification is necessary to serve the best interest. Why doesn't that mean if there's a change that you can show with clear and convincing evidence, if it's unrelated to the child's best interest, we don't care? Isn't that what the statute's really saying? Well, that's not how the statute has been interpreted by so many cases, and as I said, I submit even Cotton seems to strongly suggest that. Jared was brought up, but Jared was only limited to cohabitation, where there was a presumption that you didn't have to prove that there was an effect on the child, and the statute can change custody. Change circumstances alone are not enough. Thank you all so much. Mr. Dreisdale. Take place of court. Counsel. My name is Tom Dreisdale, and I am here on behalf of the respondent in this case, Terry Rogers. Your honors, in my time before the court, I will establish that the trial judge did correctly apply the law in this case, and did so for two reasons. First, the trial judge's decision to apply the law as written in the plain language of Section 602B, using the two-step process necessary for modification, was not an abuse of discretion in this case. And second, when we look at the record, and we look at all the testimony and all the evidence presented at trial, that the judge had ample evidence before him to determine that the petitioner's circumstances had sufficiently changed by clear and convincing evidence, and that modification was in the best interest of the minor or child in this case, unless his decision cannot be said to be against the manifest weight of the evidence. But before I get into my argument, your honors, I would like to address two points that opposing counsel brought up. First of all, according to 735 ILCS 5-2-1203, which deals with motions after judgments in non-jury cases, the trial court is, in fact, permitted, within 30 days of entry of a judgment, to grant the motion to reopen as they did in this case. Thus, there does not have to be a change in the law. The trial judge was free to do what he did in this case. And also, I would like to address the Supreme Court case of Cotton v. Cotton that opposing counsel cited. In fact, I would like to quote from Cotton where the Supreme Court was talking about what the trial court had did in that case. And, in fact, the court stated favorably what the trial court wrote in its order and said, the exact language of section 610 subsection b, and the court finds by clear and convincing evidence upon the basis of facts that have arisen since the prior judgment, there has been a change in circumstances that has occurred. And, that makes modification necessary to serve the best interests of Christina. Therefore, the Cotton case was, in fact, addressing the exact standard that is laid out in section 610b, the standard that the respondent is advancing today, and the standard that the trial court judge applied in this case. A two-step process. Step one, the party seeking modification, which in this case was Terry Rogers, shows by clear and convincing evidence that either the custodial parents circumstances have changed or the child circumstances have changed. If he makes that showing, step two, move to the best interest of the child standard and determine, based on the factors laid out in section 602, whether modification is necessary to serve the best interests of the child. Because, as Justice Steigman pointed out, the court's overarching concern is, and always will be, in any custody case, the best interest of the child. Your Honors, I also think it's important to note the standard of review that this court is to use in this case, and that was laid out by the Illinois Supreme Court in in-rate custody of Sussenbach. And in Sussenbach, the court explicitly stated the standard for modifying custody. And in that case, the court noted that where custody should lie is a determination which lies within the sound discretion of the trial court. Under 610B, the court must find, by clear and convincing evidence, that a change in custody is necessary to serve the best interest of the child. Once the court makes that determination, it should be afforded great deference. Because the trial court, of course, has the opportunity to view all the witnesses, judge their credibility, and make a determination of the best needs of the child. And it's not for the review in court to look at the trial court's decision de novo, but merely to determine whether the trial court abused its discretion. As we've heard several times your honors, section 610B lays out a clear two-step process that the trial judge is supposed to use. Step one, clear and convincing evidence of a change in circumstances. And step two, whether or not modification is in the best interest of the child. And that is what the trial judge did in this case. He went through all the evidence. He went through the evidence presented at trial. That the petitioner in this case had alcohol issues. The petitioner in this case had three separate hospitalizations where she was experiencing acute psychosis, hallucination, and delusions. There was evidence presented at the trial phase that the petitioner was found asleep on the couch while she was babysitting children. There's ample evidence in the record to show that the petitioner's circumstances had changed. Once the trial judge made that determination, he moved forward. And he made the determination that modification in this case was in the best interest of the minor child. And he did so. And the record, the common law record from page 480 to 483 shows us that the trial judge went through every single factor laid out in section 602. And when he did that, he determined that each of those factors either favored heavily the respondent or they were neutral. Not a single best interest of the child factor favored leaving custody with the petitioner. And thus, the trial judge did exactly what he was supposed to do. Exactly what the statute tells him to do. And in fact, exactly what several Supreme Court cases tell him to do. Thompson versus Thompson, all of the circumstances must be considered to affect the best interest of the child. Sussenbach, when the change in circumstances requirement is satisfied, the issue becomes whether transfer is necessary to serve the child's best interest. Jarrett versus Jarrett, Cotton versus Cotton, the guiding star in custody adjudications is and always must be the best interest of the child. Thus, the trial judge did exactly what he was supposed to. He granted the respondent's motion to reconsider as he was allowed to do by section 1203 to fix a mistake that he had made, a mistake that had been brought to his attention. And in fact, the Jarrett versus Jarrett case explicitly noted, the Illinois Supreme Court stated that we don't actually have to wait until something happens to this child before we change custody. The petitioner puts forth the contention that we have to look at what has happened when this is made. But that essentially would be telling the trial judge that it doesn't matter what's going on with the custodial parent, it doesn't matter if the custodial parent's having problems, has the child in a dangerous environment, as long as the custodial parent's been lucky enough that that child hasn't been hurt yet, we're not going to do anything. Your Honor, that just simply doesn't make sense. That simply isn't the law, it isn't consistent with the best interest of the child standard, and it isn't what the Supreme Court or any other appellate court holds. Now, the petitioner in this case, it's actually very clear that Nolte is addressing the best interest of the child standard, just like the Supreme Court, just like the statute. In fact, the Nolte court stated that custody cannot be modified on change conditions alone, and that's consistent with the statute and consistent with what the trial judge did. It goes on to say that the findings must be made that the conditions affect the welfare of the child. In the very next sentence, the Nolte court says, quote, custody cannot be modified unless there is a change in circumstances of the child related to the child's best interests. The Nolte court is using the exact same standard that every other court is using, that the statute is using, that the trial judge used in this case. In fact, Nolte goes on to say that the petitioner failed to prove that modification was in the best interest of the children, as in all custody cases, the paramount issue is the welfare of the children. Nolte is using the same standard. Nolte is not advancing some kind of different standard. Welfare of the child, best interest of the child, it's used interchangeably by the court. And in Nolte, it is used to advance the standard that the trial judge used in this case. And as was pointed out, Nolte is very much easily distinguishable from the cases we have in front of us. The only issue in Nolte was cohabitation. And when the court used adversely affect the child language, the court was specifically addressing cohabitation. Did this cohabitation adversely affect the child? And the problem in Nolte was the fact that the petitioner in that case, the father, basically came to the court and said, I can provide a better environment. He made no allegations of changed circumstances in the custodial parent or the child and basically wanted the trial judge to review the case de novo. He wanted the trial judge to say, I think the trial is better off with you. And the trial judge did in fact do that and that was the problem. The trial judge used a preponderance of the evidence standard instead of a clear and convincing standard. Moreover, Nolte is factually distinguishable. In that case we had both children saying we want to stay with our mother, we want to stay with the custodial parent. We don't have that in this case. And the biggest problem with the Nolte case is in fact the blood versus blood case as your honors pointed out. And in the blood case six years after the Nolte decision we have the third district once again endorsing the best interest of the child standard. Blood states child custody cannot be modified unless there is a material change in circumstances of the minor related to the best interest of the minor. Once again we're using the exact same standard that we see in the statute that we see in the Supreme Court that we saw the trial court judge use in this case. The court noted in blood that the issue in Nolte was the fact that the trial judge didn't apply the right standard. However, the blood court said that the trial judge in the blood case appropriately weighed the evidence and found that the respondent had established by clear and convincing evidence that the circumstances had changed and the minor child's best interest would be served if custody was transferred. Once again, the third district is using the best interest of the child standard and in fact we can look to the evidence   trial judge's case. Once the change circumstances has occurred and the court needs to move on and find whether modifications necessary to serve the best interest of the child, in determining what is in the best interest of the child, look to the evidence presented at trial, all the evidence that we heard of domestic violence incidents involving alcohol, evidence of the petitioner being pulled over for driving under the influence of alcohol, three separate incidences where the petitioner was hospitalized with delusions and psychosis. The trial judge determined that the petitioner's circumstances had changed and he determined that all that evidence showed by clear and convincing evidence that her circumstances had changed. And so the trial judge moved on. He moved on to section 602 of the act. And he went through every single section of the act.  603 of the act said that the petitioner was hospitalized three times with mental health issues, failed to follow up with a primary care physician after each hospitalization despite the fact that she was told that she needed to do so. She lied to the hospital. She failed to tell the hospital that she had custody of the minor child when she was asked. She was driving to the hospital with the minor child in the car believing that people were following her. She was then found in the bathroom of the hospital and told the nurse at the hospital that she left her child outside in the car alone in the middle of the night with some invisible people who were playing a game with him. The child then wandered into the hospital on his own. And the petitioner disputed these findings at trial, but these findings are all in the petitioner's medical records. The medical records and the nurse that testified at trial that found the petitioner said that the petitioner stated all these things and it's all there in Respondent's Exhibit No. 5. The petitioner there was testimony at trial that the petitioner was passed out on the couch while she was supposed to be babysitting other children in her care. Factor 7. Favored the Respondent. There was a gun discharged in the home of the petitioner during a domestic violence incident. The police officer that responded to the incident stated that at trial that in retrospect DCFS should have been contacted, although they wrote at the time they should have been. There was testimony presented that the petitioner was outside her house with a gun looking for people that weren't there. Factor 8. Favored the Respondent. The Respondent had to file a petition to modify visitation and the evidence showed that the Respondent was being denied contact with the child. The trial judge found this. Respondent has maintained a close relationship with the child despite the petitioner's lack of communication. The petitioner moved. She changed residences up in northern Illinois without informing the Respondent where she was changing her residence to. Your Honor, with all the evidence presented in this case to the trial judge that the petitioner's circumstances had changed and that modification would in fact be in the best interest of the child in this case, it certainly can't be said that the trial judge's decision was against the manifest weight of the evidence. The trial judge had plenty of evidence in this case to show that modification was necessary to serve this child's best interest. It's not necessary, despite the petitioner's contentions, that the trial judge, that this court, that any court, sit back and wait for a child to be harmed. It's not necessary that we wait for harm to come upon this child before the judge is able to change custody to the parent who would better serve the best interest of the child. And in this case, the court determined that that parent was Terry Rogers in this case after hearing all the evidence. And your honors, in the overwhelming majority of case law, the statute itself, the third district, all the courts hold that it is a two-step process. Step one, find a change in circumstances in the child or find a change in circumstances of the custodial parent by clearly convincing evidence. If you do that, it moves on to step two. And on step two, you go to section 602 and you determine whether modification is in the best interest of the minor child because that is the paramount concern. In this custody case, in all custody cases throughout Illinois, is the minor child's best interest being served by the arrangement. And that is what the trial judge did. And when we look at the evidence, when we look at the record, everything presented to the trial judge, it's abundantly clear that there was more than enough evidence for the trial judge to make a determination that modification was in fact in the best interest of the minor child.        a case that is a case that is a case that is a case that is a case that  is a case that  a case     that is a case that is a case that is a case that is a case that is a    a case that is a case that is a case that is a case that is a case that is a case that is a case that is a case that  says  that   case    case that someone gave to somebody because this case is subject to a possibility that it could be treated daedris    to  possibility    could be treated this way. This is the problem that we have to address. This is the problem that we  to address.